ANTHONY G. MANGO (AM-4962)
MANGO & IACOVIELLO, LLP
14 Penn Plaza, Suite 1919
New York, New York 10122
212-695-5454
212-695-0797 facsimile

Attorneys for Plaintiff Scott Balsan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SCOTT BALSAN,

                       Plaintiff,                10-Civ-7845 (DLC)

                                          AMENDED COMPLAINT
                                          AND JURY TRIAL DEMAND

                      v.

COSMOPOLITAN DECORATING CO., INC.;
TDA CONSTRUCTION, INC.; FINE PAINTING
AND DECORATING CO.; FCS GROUP LLC;
and DISTRICT COUNCIL 9 OF THE
INTERNATIONAL UNION OF PAINTERS
AND ALLIED TRADES, a/k/a IUPAT DC#9,

                        Defendants.
-------------------------------------------------------------------X

      Plaintiff, Scott Balsan ("Balsan" or "plaintiff"), as and for his amended complaint, by his

attorneys, Mango & Iacoviello, LLP, alleges as follows:

## NATURE OF ACTION

      This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, as amended ("Title

VII"), The New York State Human Rights Law, McKinney's Executive Law §§290 *et seq.*

("NYSHRL"), and The New York City Human Rights Law, Administrative Code of the City of

New York §§8-101 *et seq.* ("NYCHRL"), for unlawful employment discrimination against defendants on the basis of national origin (non-Hispanic) and race (Caucasian), and unlawful retaliation for complaints by plaintiff about such discrimination. As alleged with greater detail herein, Defendant Cosmopolitan Decorating Co., Inc. ("defendant") discriminated against Mr. Balsan by treating him differently than Hispanic employees in the terms and conditions of his employment, including but not limited to frequent verbal harassment, the denial of job opportunities and ultimately terminating his employment after plaintiff complained of discrimination.

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343, conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-5(f)(1) and (3) and §2000e-6 ("Title VII"), and pursuant to Section 102 of The Civil Rights Act of 1991. The Court's supplemental jurisdiction of claims arising under the human rights laws of New York State and New York City is invoked under 28 U.S.C. §1367.

2.      Venue herein is proper under 28 U.S.C. §1391(b), and 42 U.S.C. §2000e-5(f)(3) as defendants reside within the Southern District of New York and/or all acts complained of occurred within the Southern District of New York.

## THE PARTIES

3.      Plaintiff is a non-Hispanic, Caucasian American citizen, residing in Glendale, New York.

4.      Defendant, Cosmopolitan Decorating Co., Inc. (hereinafter "Cosmopolitan" or collectively with the other defendants as "defendants"), is a New York corporation doing business in the Southern District of New York and is subject to the jurisdiction of this Court. Defendant is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), the NYSHRL, and the NYCHRL.

5.      Defendant, TDA Construction, Inc. (hereinafter "TDA" or collectively with the other defendants as "defendants"), is a New York corporation doing business in the Southern District of New York and is subject to the jurisdiction of this Court.  TDA is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), the NYSHRL, and the NYCHRL.

6.      Defendant, Fine Painting and Decorating Co. (hereinafter "Fine" or collectively with the other defendants as "defendants"), upon information and belief, is a New Jersey corporation doing business in the Southern District of New York and is subject to the jurisdiction of this Court.  Fine is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), the NYSHRL, and the NYCHRL.

7.      Defendant, FCS Group LLC, (hereinafter "FCS" or collectively with the other defendants as "defendants"), is a New York limited liability company doing business in the Southern District of New York and is subject to the jurisdiction of this Court.  FCS is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), the NYSHRL, and the NYCHRL.

8.      Defendant IUPAT DC#9 is the New York City chapter of the International Union of Painters and Allied Trades, a North American labor union representing over 160,000 workers skilled in the finishing trades, doing business in the Southern District of New York and subject to

the jurisdiction of this Court.  IUPAT DC#9 is an employer within the meaning of Title VII, 42

U.S.C. §2000e(b), the NYSHRL, and the NYCHRL.

## FACTS

### Facts Concerning Defendant Cosmopolitan

9.      In or about September 2008, Cosmopolitan hired plaintiff as a Job

Steward/Painter.  Cosmopolitan is a member and a party to a collective bargaining agreement

with defendant IUPAT DC#9 (DC9), the terms of which governed plaintiff's employment with

Cosmopolitan.  Throughout plaintiff's entire tenure working for Cosmopolitan, plaintiff's job

performance was always exemplary.

10.      Plaintiff's supervisor at Cosmopolitan was a Hispanic male named Carlos Romero

("Romero").  Despite the fact that plaintiff's performance as a Job Steward/Painter with

defendant was exemplary, Romero continually harassed plaintiff while making remarks about

plaintiff's national origin and race.

11.      For example, Romero stated to plaintiff that "white people think they can do

whatever they want – I'm the [f***ing] man in this company."

12.      On another occasion, Romero told plaintiff that he "only like[s] to work with

Spanish men, because white guys can't keep their mouths shut."

13.      On several occasions, Romero sent plaintiff home from work, telling plaintiff that

there was no work available to him, despite the fact that Romero permitted Hispanic individuals

to remain on the job site.  Romero did not send home any Hispanic workers on these occasions.

14.      On one occasion, paychecks for the employees were not available on Thursday at

the job site, which was required by the union trade association agreement.  When plaintiff

learned of this, he contacted Cosmopolitan's Chief Executive Officer. Subsequently, plaintiff contacted a representative at defendant IUPAT DC#9 regarding the paycheck issue. When Romero learned about this, he stated to plaintiff "I run things here. You have a problem you come to me." Then Romero called plaintiff a "vato sucio," which, upon information and belief, translates to "dirty faggot" in English.

15.    Several weeks later, Romero appeared at the job site at which plaintiff was employed, at 1775 Broadway, New York, New York. Romero began yelling at plaintiff, asking him why he was standing around "doing nothing." Romero then stated to plaintiff "that's the problem with white guys, you don't want to do anything and then when I catch you you call the union. This is why I work with just my people."

16.    On another occasion, Romero sent plaintiff's paycheck to the jobsite, despite the fact that Romero knew that plaintiff had been picking up his check downtown at Cosmopolitan's offices. This caused plaintiff to be late in picking up his son. Romero knew this and nevertheless intentionally caused plaintiff this inconvenience.

17.    A week or so later, when plaintiff showed up for work at the job site at 1775 Broadway, he was told that the job site had been shut down. The foreman Alejandro (Alex) told plaintiff to contact Romero about being placed at another job site. When plaintiff contacted Romero he was told by Romero that there was no other work available and that plaintiff was being laid off.

18.    The next morning, plaintiff received a telephone call from Joe Morro, the foreman for the laborers on the job site at 1775 Broadway. Morro informed plaintiff that five or six painters had returned to the job site. Under the contract with IUPAT DC#9, plaintiff was

supposed to be the third painter called back in the event the job was reopened.  This was just one day after Romero had informed plaintiff that he was laid off due to a lack of work.

19.     Ultimately, after plaintiff contacted the business agent from defendant IUPAT DC#9 and informed him of Romero's actions, plaintiff was told to return to work at the job site at 1775 Broadway.

20.     Approximately two weeks later, plaintiff was informed once again that there was no additional work at 1775 Broadway, and he was sent home.  This was despite the fact the job was in fact not completed, and Cosmopolitan was paying non-union Hispanic painters to work at the job site at night.  Nevertheless, plaintiff was informed by the foreman at the job site, Alejandro (Alex), that there was no more work for plaintiff.

21.     Ultimately, Romero went so far as to falsify a report to defendant IUPAT DC#9, claiming that plaintiff had threatened the life of Alejandro (Alex), the foreman at the job site. This was completely false and fabricated by Romero, in an attempt to falsely justify his disparate treatment of plaintiff, including his multiple comments and actions directed against plaintiff's national origin (non-Hispanic) and race (Caucasian).

22.     Ultimately, plaintiff was terminated from employment by Cosmopolitan, when Cosmopolitan refused to permit plaintiff to continue to work despite the fact that work was available, and less-qualified, Hispanic painters were being employed by Cosmopolitan to the exclusion of plaintiff.

23.     Plaintiff registered numerous complaints to defendant IUPAT DC#9, due to the multiple violations of the union contract perpetuated by Cosmopolitan through the actions of Romero.  On each such occasion, when Romero learned of plaintiff's complaints to the defendant IUPAT DC#9, Romero retaliated against plaintiff with a barrage of verbal insults

directed at plaintiff's national origin and race, and ultimately had plaintiff terminated from further employment with Cosmopolitan.

24.    Cosmopolitan discriminated against plaintiff on the basis of his national origin, non-Hispanic, and his race, Caucasian, by denying him terms and conditions of employment equal to that of his peers, by verbally harassing plaintiff and creating a hostile working environment, and by terminating him in retaliation for his complaints of discrimination.

25.    The effect of the practices complained of above has been to deprive plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his national origin, non-Hispanic, and race, Caucasian.

26.    The unlawful practices complained of above were intentional, and were committed by Cosmopolitan with malice and/or reckless indifference to plaintiff's legally protected rights of equal employment.

27.    In response to the acts perpetuated by defendant, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission.

28.    After its investigation concluded, the EEOC issued a Determination Letter, on March 25, 2010, finding that Cosmopolitan "harassed and retaliated against [plaintiff] by creating a hostile work environment with numerous harassing remarks about [plaintiff's] national origin and race, and by giving Hispanic individuals more opportunities to work than [plaintiff]. After [plaintiff] protested, [Cosmopolitan] laid him off from the job" A copy of the EEOC's Determination Letter is annexed hereto as Exhibit 1.

29.    After attempts by the EEOC to conciliate the matter were unsuccessful, the EEOC issued a Notice of Right To Sue, dated July 20, 2010, which was received by plaintiff on or

about July 26, 2010.  A copy of the EEOC's Notice of Right to Sue is annexed hereto as <u>Exhibit 2</u>.

30.     Plaintiff has satisfied all administrative filing requirements and prerequisites to the filing of this action pursuant to Title VII, the NYSHRL and NYCHRL, prior to commencing this action.

### Facts Concerning Defendants Fine and FCS

31.     Plaintiff commenced employment with Fine and/or FCS in May, 2010.  During plaintiff's entire tenure working for Fine and/or FCS plaintiff's performance was exemplary. Plaintiff was the only Caucasian, non-Hispanic individual working for Fine and/or FCS at the Dyckman Street work site in New York, New York.

32.     In July 2010 plaintiff was terminated from his employment with Fine and/or FCS, and was told by Fine and/or FCS that the work site was being "shut down."

33.     Subsequent to plaintiff's termination from Fine and/or FCS in July 2010, plaintiff learned that the work site had not been shut down, despite his being told this by Fine and/or FCS. Rather, the work at the Dyckman Street site had continued with exclusively Hispanic employees.

34.     Fine and/or FCS discriminated against plaintiff on the basis of his national origin, non-Hispanic, and his race, Caucasian, by denying him terms and conditions of employment equal to that of his peers, by verbally harassing plaintiff and creating a hostile working environment, and by terminating him in retaliation for his complaints of discrimination.

35.     The effect of the practices complained of above has been to deprive plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his national origin, non-Hispanic, and race, Caucasian.

36.     The unlawful practices complained of above were intentional, and were committed by Fine and/or FCS with malice and/or reckless indifference to plaintiff's legally protected rights of equal employment.

37.     In response to the acts perpetuated by defendant, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission.

38.     The EEOC issued a Notice of Right To Sue, dated January 13, 2011.  A copy of the EEOC's Notice of Right to Sue is annexed hereto as Exhibit 2.

39.     Plaintiff has satisfied all administrative filing requirements and prerequisites to the filing of this action pursuant to Title VII, the NYSHRL and NYCHRL, prior to commencing this action.

**Facts Concerning Defendant TDA**

40.     Plaintiff commenced employment with TDA in May, 2010.  During plaintiff's entire tenure working for TDA plaintiff's performance was exemplary.  Plaintiff and three coworkers were the only Caucasian, non-Hispanic individuals working for TDA at its Parkchester Avenue work site in Bronx, New York.

41.     In June 2010 plaintiff, along with his three non-Hispanic coworkers, was terminated from his employment with TDA, and was told by TDA that the work site was being "shut down."

42.     Subsequent to plaintiff's termination from TDA in June 2010, plaintiff learned that the work site had not been shut down, despite his being told this by TDA.  Rather, the work at the Parkchester Avenue site had continued with exclusively Hispanic employees.

43.     TDA discriminated against plaintiff on the basis of his national origin, non-Hispanic, and his race, Caucasian, by denying him terms and conditions of employment equal to

that of his peers, by verbally harassing plaintiff and creating a hostile working environment, and by terminating him in retaliation for his complaints of discrimination.

44.     The effect of the practices complained of above has been to deprive plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his national origin, non-Hispanic, and race, Caucasian.

45.     The unlawful practices complained of above were intentional, and were committed by TDA with malice and/or reckless indifference to plaintiff's legally protected rights of equal employment.

46.     In response to the acts perpetuated by defendant, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission.

47.     The EEOC issued a Notice of Right To Sue, dated January 13, 2011.  A copy of the EEOC's Notice of Right to Sue is annexed hereto as Exhibit 2.

48.     Plaintiff has satisfied all administrative filing requirements and prerequisites to the filing of this action pursuant to Title VII, the NYSHRL and NYCHRL, prior to commencing this action.

**Facts Concerning Defendant IUPAT DC#9**

49.     Plaintiff has been a member of Defendant IUPAT DC#9 since 1980.  In 1980, when plaintiff first joined the union and became a member of IUPAT DC#9, the membership was predominantly Caucasian, and Non-Hispanic.  Currently, the membership of IUPAT DC#9 is predominantly Hispanic.

50.     Arising out of his experiences of national origin and race discrimination as set forth above, as related to defendants Cosmopolitan, Fine, FCS, and TDA, plaintiff has filed numerous complaints with IUPAT DC#9 with respect to this discriminatory treatment.

51.     Defendant IUPAT DC#9 has done nothing in response to these numerous complaints of discrimination filed by plaintiff.

52.     In response to plaintiff's complaints and charges filed with defendant IUPAT DC#9, plaintiff has been retaliated against by IUPAT DC#9.  IUPAT DC#9 has retaliated against plaintiff by refusing to assign him work, despite plaintiff's very high placement on the work list maintained by IUPAT DC#9.

53.     IUPAT DC#9 retaliated against plaintiff by selecting Hispanic union members for work assignments, instead of plaintiff, despite the fact that plaintiff was higher on the work assignment list, has more seniority, and is more qualified than the Hispanic workers assigned work by defendant IUPAT DC#9.

54.     IUPAT DC#9 discriminated against plaintiff on the basis of his national origin, non-Hispanic, and his race, Caucasian, by denying him terms and conditions of employment equal to that of his peers, by verbally harassing plaintiff and creating a hostile working environment, and by retaliating against him in response to his complaints of discrimination.

55.     The effect of the practices complained of above has been to deprive plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his national origin, non-Hispanic, and race, Caucasian.

56.     The unlawful practices complained of above were intentional, and were committed by IUPAT DC#9 with malice and/or reckless indifference to plaintiff's legally protected rights of equal employment.

57.     In response to the acts perpetuated by defendant, plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission.

58.     The EEOC issued a Notice of Right To Sue, dated January 13, 2011.  A copy of the EEOC's Notice of Right to Sue is annexed hereto as Exhibit 2.

59.     Plaintiff has satisfied all administrative filing requirements and prerequisites to the filing of this action pursuant to Title VII, the NYSHRL and NYCHRL, prior to commencing this action.

## FIRST CLAIM FOR RELIEF

### (National Origin Discrimination In Violation Of Title VII)

60.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 59 above.

61.     Defendants intentionally discriminated against plaintiff on account of his national origin in violation of Title VII and The Civil Rights Act of 1991, 42 U.S.C. §1981a, as amended (hereinafter "The Civil Rights Act of 1991"), by denying plaintiff equal terms and conditions of employment and by terminating his employment.

62.     Defendant's acts of discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.

63.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

64.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## SECOND CLAIM FOR RELIEF

### (National Origin Discrimination In Violation Of The NYSHRL)

65.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 64 above.

66.     Defendants intentionally discriminated against plaintiff on account of his national origin in violation of NYSHRL, McKinney's Executive Law §296(1)(a), by denying plaintiff equal terms and conditions of employment and by terminating his employment.

67.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

68.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.


## THIRD CLAIM FOR RELIEF

### (National Origin Discrimination In Violation Of The NYCHRL)

69.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 68 above.

70.     Defendants intentionally discriminated against plaintiff on account of his national origin in violation of NYCHRL, New York City Administrative Code §§8-107 *et seq.*, by denying plaintiff equal terms and conditions of employment and by terminating his employment.

71.     Defendants' acts of discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.

13

72.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

73.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## FOURTH CLAIM FOR RELIEF

### (Racial Discrimination In Violation Of Title VII)

74.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 73 above.

75.     Defendants intentionally discriminated against plaintiff on account of his race in violation of Title VII and The Civil Rights Act of 1991, by denying plaintiff equal terms and conditions of employment and by terminating his employment.

76.     Defendants' acts of discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.

77.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

78.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## FIFTH CLAIM FOR RELIEF

### (Racial Discrimination In Violation Of The NYSHRL)

79.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 78 above.

80.     Defendants intentionally discriminated against plaintiff on account of his race in violation of NYSHRL, §296(1)(a), by denying plaintiff equal terms and conditions of employment and by terminating his employment.

81.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

82.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## SIXTH CLAIM FOR RELIEF

### (Racial Discrimination In Violation Of The NYCHRL)

83.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 82 above.

84.     Defendants intentionally discriminated against plaintiff on account of his race in violation of NYCHRL, §§8-107 *et seq.*, by denying plaintiff equal terms and conditions of employment and by terminating his employment.

85.     Defendants' acts of discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.

86.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

87.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## SEVENTH CLAIM FOR RELIEF

### (Retaliation In Violation Of Title VII)

88.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 87 above.

89.     Defendants intentionally discriminated against plaintiff by retaliating against him for plaintiff's complaints of discriminatory treatment in violation of Title VII and The Civil Rights Act of 1991.  Such retaliation took the form of harassment, the denial of employment to plaintiff, and termination.

90.     Defendants' acts of discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.

91.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

92.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## EIGHTH CLAIM FOR RELIEF

### (Retaliation In Violation Of The NYSHRL)

93.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 92 above.

94.     Defendants intentionally discriminated against plaintiff by retaliating against him for plaintiff's complaints of discriminatory treatment in violation of NYSHRL, §296(1)(e).  Such retaliation took the form of harassment, the denial of employment to plaintiff, and termination.

95.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

96.     As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## NINTH CLAIM FOR RELIEF

### (Retaliation In Violation Of The NYCHRL)

97.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 96 above.

98.     Defendants intentionally discriminated against plaintiff by retaliating against him for plaintiff's complaints of discriminatory treatment in violation of NYCHRL, §8-107 *et seq.* Such retaliation took the form of harassment, the denial of employment to plaintiff, and termination.

99.    Defendants' acts of discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.

100.    As a proximate result of defendants' acts of unlawful discrimination, plaintiff suffered emotional harm, embarrassment, pain and suffering, humiliation and harm to his reputation.

101.    As a proximate result of defendants' acts of unlawful discrimination, plaintiff has suffered and continues to suffer substantial losses of past and future earnings, and other benefits associated with his former employment.

## JURY DEMAND

102.    Plaintiff demands a jury on all claims stated herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendants as follows:

(a)    against defendants under the First, Fourth, and Seventh Claims for Relief under Title VII,

(1)  preliminarily and permanently restraining defendants from engaging in the aforementioned conduct;

(2)  awarding plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of defendants;

(3) awarding plaintiff reinstatement or front pay;

(4) awarding plaintiff compensatory damages;

(5) awarding plaintiff punitive damages;

(6) awarding plaintiff reasonable attorneys' fees and costs incurred in this action;

and

(7) awarding plaintiff any other relief this Court deems to be just, equitable and proper; and

(b)      against defendants under the Second, Fifth, and Eighth Claims for Relief under the NYSHRL,

(1)  preliminarily and permanently restraining defendants from engaging in the aforementioned conduct;

(2)  awarding plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of defendants;

(3) awarding plaintiff reinstatement or front pay;

(4) awarding plaintiff compensatory damages; and

(5) awarding plaintiff any other relief this Court deems to be just, equitable and proper; and

(c)      against defendants under the Third, Sixth, and Ninth, and Seventh Claims for Relief under the NYCHRL,

(1)  preliminarily and permanently restraining defendants from engaging in the aforementioned conduct;

(2)  awarding plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of defendants;

(3) awarding plaintiff reinstatement or front pay;

(4) awarding plaintiff compensatory damages;

(5) awarding plaintiff punitive damages;

(6) awarding plaintiff reasonable attorneys' fees and costs incurred in this action;

and

(7) awarding plaintiff any other relief this Court deems to be just, equitable and

proper.


Dated: New York, New York
        January 28, 2011

                        Respectfully Submitted,

                        **MANGO & IACOVIELLO, LLP**

                        By:

                            Anthony G. Mango (AM-4962)
                            14 Penn Plaza, Suite 1919
                            New York, New York 10122
                            (212) 695-5454


                        Attorneys for Plaintiff Scott Balsan

20